IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Airgas USA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 50316 |
| | ) | |
| vs. | ) | |
| | ) | |
| Timothy Adams, | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendant. | ) | |

### ORDER

For the reasons stated below, defendant's motion [11] to dismiss is denied. On or before July 27, 2016, the parties shall contact Magistrate Judge Johnston to arrange a settlement conference or mediation.

### STATEMENT-OPINION

Plaintiff, Airgas USA, LLC ("Airgas") brings this action against, defendant, Timothy Adams, its former employee, for breach of contract (Count I) and misappropriation of trade secrets (Count II). Airgas is a limited liability company whose sole member is Airgas, Inc., a Delaware corporation with its principal place of business in Pennsylvania. Defendant is alleged to be a citizen of Illinois. The amount in controversy is alleged to exceed $75,000. The court has subject matter jurisdiction. 28 U.S.C. § 1332(a)(1). Defendant moves [11] to dismiss both counts for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The facts are taken from plaintiff's complaint. On November 1, 2013, plaintiff acquired the assets of Encompass Gas Group ("Encompass"). Encompass had formerly been known as Rockford Industrial Welding Supply, Inc. ("RIWS"). Defendant had been employed by RIWS/Encompass since at least 2000. Defendant began in a customer service role. On February 1, 2007, Encompass promoted him to territorial sales manager. When plaintiff acquired the assets of Encompass, defendant began working for plaintiff in the same capacity he had worked for Encompass - as a territorial sales manager. He worked with the same customers in the same territory he had been assigned when working for Encompass.

In conjunction with plaintiff's acquisition of the assets of Encompass, defendant signed a Confidentiality and Non-Solicitation Agreement dated 10/23/13 ("Agreement"). Defendant is identified as "Associate" and plaintiff as "Company" in the Agreement. The Agreement provided that the Company agreed to employ Associate in the capacity of territorial sales manager and provide Associate with access to Confidential Information, access to customers "and the ability to develop goodwill with them and/or specialized training." The Agreement

1

provided "Associate is an at-will associate and this Agreement does not and shall not be deemed to alter Associate's at-will status."

The Agreement contained a provision prohibiting the Associate from using or disclosing certain defined "Confidential Information" to any third party "either during or after the Associate's employment with the Company, except in the Associates's proper performance of duties for the Company and then only to those persons or entities authorized by written prior consent of the Company." The defined "Confidential Information" included trade secrets as well as a an extensive list of other items - among them know-how and technical processes; customer lists, contact information, sales histories, needs and preferences, and terms of business; pricing policies and structures; operational methods; and financial information.

The Agreement also contained a non-solicitation provision prohibiting the Associate "[d]uring employment and for a period of one (1) year following the termination of such employment for whatever reason" from soliciting "any Customer of the Company with whom the Associate had material business-related contact or about whom the Associate had access to Confidential Information, for the purpose of: (a) soliciting such Customer to purchase a Conflicting Product or Service; (b) interfering with the Company's relationship with its Customer by encouraging such Customer to cease doing business with the Company or to reduce the amount of business such Customer does with the Company."

The Agreement also provided: "Associate further acknowledges that the restrictions contained in this Agreement will not prevent Associate from obtaining meaningful employment or consulting work following the termination of his or her employment."

The complaint alleges defendant utilized all of this confidential and trade secret information in identifying plaintiff's "current and prospective customers, interfacing with them, and selling them various gas and welding products" and that defendant "could not have performed any of his work on behalf of plaintiff without such information" and "would not have learned or otherwise had access to such information but for his employment as a territorial sales manager" for plaintiff.

On May 26, 2015 defendant resigned his employment with plaintiff informing plaintiff he was going to work for Weldstar, a competitor. The complaint alleges on information and belief that by June 1, 2015 defendant began working in a similar sales capacity for Weldstar, that defendant contacted two of plaintiff's customers in early June 2015 for the purpose of soliciting their business on behalf of Weldstar, and that both were customers defendant had material business-related contact with during the last twelve months of his employment.

In November 2015, plaintiff learned defendant continued to solicit dozens of customers with whom he had material contacts during the last twelve months of his employment. As a result of defendant's solicitations at least two long-standing Airgas customers ceased doing business with plaintiff and entered into twelve month contracts with Weldstar amounting to over $275,000 in lost business for plaintiff.

Plaintiff alleges in Count I that these actions by defendant are a breach of the Agreement and that plaintiff has been damaged by this breach. Plaintiff alleges in Count II that it has confidential and proprietary information that constitutes a trade secret within the meaning of the Illinois Trade Secrets Act, 765 ILCS 1065, et seq.; that plaintiff took reasonable efforts and instituted reasonable precautions to protect the confidentiality of its proprietary, confidential and trade secret information; that defendant "is currently employed by a direct competitor of Airgas

in the niche filed of speciality gas services and welding products and in a position identical to the position he held at Airgas; and that defendant "has or will inevitably disclose Airgas' trade secrets through his current employment at Weldstar."

Defendant moves to dismiss Count I arguing lack of consideration for the Agreement and failure to adequately allege customer solicitations. Defendant moves to dismiss Count II arguing plaintiff's failure to allege defendant took or retained any trade secrets or used them in soliciting customers. The parties agree Illinois law applies.

As to Count I, defendant argues the Agreement lacks consideration because defendant did not work for plaintiff for at least two years after entering the Agreement. Defendant maintains Illinois law, as declared by the Illinois Appellate Court, requires a minimum of two years employment by an at-will employee after entering a restrictive covenant for there to be adequate consideration to support the restrictive covenant. Fifield v. Premier Dealer Servs., Inc., 993 N.E.2d 938 (Ill. App. 2013). Fifield stated "Illinois courts have repeatedly held that there must be at least two years or more of continued employment to constitute adequate consideration in support of a restrictive covenant." Id., at 943.

While Fifield, McInnis v. OAG Motorcycle Ventures, Inc., 35 N.E.3d 1076 (Ill. App. 2015), and Prairie Rheumatology Assoc., S.C. v. Francis, 24 N.E.3d 58 (Ill. App. 2014) have applied a bright-line test requiring at least two years of continued employment for the continued employment to be considered adequate consideration, the Illinois Supreme Court holds that the validity of a noncompetition agreement depends "on the totality of the facts and circumstances of the individual case. Factors to be considered in this analysis include, but are not limited to, the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions. No factor carries any more weight than any other, but rather its importance will depend on the specific facts and circumstances of the individual case." Reliable Fire Equip. Co. v. Arredondo, 965 N.E.2d 393, 403 (Ill. 2011). A "totality of the facts and circumstances" test conflicts with the "bright-line" rule utilized by the Illinois Appellate Court in the cases noted above. Accordingly, the court rejects the two-year bright-line rule. In doing so, the court joins the other federal courts in this district that have determined that "[i]t is probable, that if confronted with the question of the adequacy of consideration, the [Illinois Supreme Court] would likewise avoid the appellate courts' bright-line test in favor of a more flexible case-by-case determination, considering the totality of the circumstances." Allied Waste Servs.of North America v. Tibble, No. 16 C 1660, 2016 WL 1441449, *4 (N.D. Ill. Apr. 7, 2016) (Leinenweber, J.); see also, R.J. O'brien & Assoc., LLC v. Williamson, No. 14 C 2715, 2016 WL 930628 (N.D. Ill. Mar. 3, 2016) (Gettleman, J.); Montel Aetnastak, Inc. v. Miessen, 998 F. Supp.2d 694 (N.D. Ill. 2014) (Castillo, C.J.); but see, Instant Technology, LLC v. DeFazio, 40 F.Supp. 3d 989 (Holderman, J.).

Defendant also argues Count I fails to plausibly state a claim for wrongful solicitation of customers. He contends that the allegation "on information and belief" that he contacted two of plaintiff's customers in early June 2015 and the allegation that plaintiff learned in November 2015 that defendant continued to solicit dozens of plaintiff's customers are conclusory because the complaint does not allege what he did that constituted soliciting in breach of the agreement. Defendant also argues that the allegation that, as the result of his wrongful solicitations, two customers ceased doing business with plaintiff and entered contracts with Weldstar, is

3

insufficient because those "alleged contracts could result from customers soliciting Adams or Weldstar or from other Weldstar employees' solicitations."

However, the degree of specificity defendant claims is necessary is, in fact, not necessary. The Agreement clearly prohibits defendant from contacting customers of plaintiff and asking them to buy someone else's product. The complaint alleges defendant solicited plaintiff's customers and that at least two of those customers bought someone else's products–defendant's new employer's products - as a result of that solicitation. Defendant can deny in his answer that these things occurred but he is not entitled to dismissal because plaintiff did not plead the method of defendant's alleged contacts with these customers, or when they occurred or name them in the complaint. The complaint plausibly states a claim for breach of contract. Shield Technologies Corp. v. Paradigm Positioning, LLC, 908 F.Supp. 2d 914, 918 (N.D. Ill. 2012) (Grady, J.).

As to Count II, defendant contends the complaint fails to allege defendant took or retained any trade secrets or used them in soliciting customers. However, the complaint alleges defendant had access to plaintiff's confidential information including customer lists, pricing policies, sales histories and financial information. These types of information fall within the definition of trade secrets under the Illinois Trade Secrets Act. Tibble, 2016 WL 1441449 at *7. The complaint alleges defendant is currently employed by a direct competitor in a position identical to the one he held at plaintiff and that he will inevitably disclose these trade secrets through his current employment. "[U]nder a theory of inevitable disclosure, a plaintiff need not point to concrete evidence of misappropriation." Id. The court declines to dismiss the Trade Secret Act claim of Count II.

The court believes the parties would be well-served by reaching an early resolution/settlement of this case. On or before July 27, 2016, the parties shall contact Magistrate Judge Johnston to arrange a settlement conference or mediation.

For the foregoing reasons, defendant's motion [11] to dismiss is denied. On or before July 27, 2016, the parties shall contact Magistrate Judge Johnston to arrange a settlement conference or mediation.

Date: 6/27/2016                    ENTER:

_____
United States District Court Judge

Electronic Notices. (LC)
Copy to Magistrate Judge Johnston